IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMUEL STOCK, JR.,

       Plaintiff,

v.                                          CV 18-0472 JHR

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Samuel Stock Jr.'s Motion to Reverse or Remand the Administrative Agency Decision [Doc. 19], and Memorandum Brief in Support thereof [Doc. 20], filed October 15, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including the entry of final judgment. [Docs. 9, 17, 18]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"),[1] the Court **denies** Mr. Stock's Motion for the reasons set forth below.

## I)     INTRODUCTION

This Court's institutional role is to ensure that the Commissioner's decision to deny Social Security benefits is supported by the law and substantial evidence. This standard is deferential; the Court may neither reweigh evidence nor substitute its judgment for that of the Agency. In this case, Mr. Stock argues that the ALJ assigned to his claim failed to accord proper weight to several medical sources, resulting in unsupported findings at Step Three of the sequential evaluation

---

[1] Documents 13 and 13-1 comprise the sealed Administrative Record. The Court cites to the Record's internal pagination, rather than CM/ECF document and page number.

process and a deficient residual functional capacity ("RFC") finding. Mr. Stock also argues that the ALJ's findings at Step Five are unsupported by substantial evidence because they omit several of his limitations and find that he can do work which is beyond his capacity. For these reasons, Mr. Stock argues that his case must be remanded to the Administration for further proceedings.

The Court is not convinced that the ALJ erred. First, the Court finds the ALJ's weighing of the medical opinions in the record to be supported by law and substantial evidence. Thus, the ALJ's findings at Steps Three and Five, which rely on his analysis of those opinions, are also supported by substantial evidence. This being the case, the Court rejects Mr. Stock's position that his residual functional capacity should have been more restrictive. Finally, Mr. Stock has cited nothing in support of his position that he cannot perform the jobs identified by the ALJ here. For these reasons, the Court must affirm the ALJ's decision denying benefits.

## II)    BACKGROUND

Mr. Stock filed an application with the Social Security Administration for supplemental security income benefits under Title XVI of the Social Security Act on September 22, 2014. *AR* at 249-257. He initially alleged a disability onset date of November 30, 2013, due to "back impairments, migraines, TBI, Anxiety [and] Bipolar," *AR* at 250, but later moved to amend his alleged disability onset date to the date of his application. *AR* at 179. The Administration denied Mr. Stock's claim initially and upon reconsideration, and he requested a *de novo* hearing before an administrative law judge ("ALJ"). *AR* at 117-164.

ALJ Michael Leppala held an evidentiary hearing on February 16, 2017. *AR* at 35-94. On June 16, 2017, the ALJ issued an unfavorable decision, finding that Mr. Stock has not been under a disability from his alleged onset date through the date of his decision. *AR* at 12-34. In response, Mr. Stock filed a "Request for Review of Hearing Decision/Order" on July 19, 2017. *AR* at 230-

248. After reviewing his case, the Appeals Council denied Mr. Stock's request for review on May 7, 2018. *AR* at 1-6. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Mr. Stock has not engaged in substantial gainful activity since his application date. *AR* at 17. At Step Two, he determined that Mr. Stock has the severe impairments of "history of cerebral trauma, arthropathies, migraines, obesity, gastrointestinal reflux disease (GERD), anxiety disorders, organic mental disorders, and substance abuse disorders[.]" *AR* at 17. At Step Three, the ALJ concluded that Mr. Stock's impairments, individually and in combination, do not meet or medically equal the

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

regulatory "listings." *AR* at 18-20. Specifically, the ALJ found that Mr. Stock meets neither Listing 1.02, 1.04, 11.03, 11.18, 12.02, 12.04, nor 12.06.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Stock retains the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except the Claimant is capable of lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing or walking for a total of six hours in an eight-hour workday, and sitting for a total of six hours in an eight-hour workday, all with normal work breaks. The Claimant is further limited to occasionally climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds, frequently balancing, kneeling, crouching, and crawling, and occasionally stooping. The Claimant must avoid concentrated exposure to operational controls of moving machinery, unprotected heights, and hazardous machinery. The Claimant has the capacity to understand, remember, and carry out simple instructions, attend and concentrate for extended periods with usual rest breaks, interact appropriately with others in the workplace, exercise reasonable judgment with work-related tasks, and complete a routine workday under normal supervision.

*AR* at 20.

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert, the ALJ determined that Mr. Stock has no past relevant work. *AR* at 28. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Stock can perform, despite his limitations. *AR* at 28. Specifically, the ALJ determined that Mr. Stock retains the functional capacity to work as an office helper, a cafeteria attendant, and a bakery

worker. *AR* at 29. Accordingly, the ALJ determined that Mr. Stock is not disabled as defined in the Social Security Act and denied benefits. *AR* at 33.

### III) LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). "[I]n making this determination, [this Court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016). The Court must exercise "common sense" when determining whether the substantial evidence standard has been met; if the Court can follow the ALJ's reasoning, the decision must stand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The standard for a decision to be supported by substantial evidence is low. "'Substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### IV) ANALYSIS

Mr. Stock argues that the ALJ's decision in his case must be reversed because the ALJ "failed to apply the correct legal standards for evaluation of medical evidence; … failed to make a proper assessment at Step Three of the Sequential Evaluation Process under the mental Listings of Impairments; and … failed to apply the criteria of Social Security Ruling 96-8p in his residual functional capacity findings, entered findings not supported by the evidence, and relied on vocational expert testimony based on an unsupported residual functional capacity." [Doc. 20, p.8]. For the reasons that follow, the Court disagrees.

**A) The Court finds no error in the ALJ's weighing of the medical opinions in the record.**

"It is the ALJ's duty to give consideration to all the medical opinions in the record. . . . He must also discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (cited regulations omitted). Mr. Stock does not argue that the ALJ failed to comply with this requirement, only that the ALJ should have given greater weight to certain providers. The Court is not convinced.

   *i)    Angela Jones, PT*

The first provider that Mr. Stock argues should have been given greater weight is Angela Jones, PT. [*See* Doc. 20, pp. 8-10]. Ms. Jones assessed Mr. Stock's functioning on April 12, 2016, and completed a Questionnaire and Quantified Functional Capacity Evaluation describing his abilities. *See AR* at 544-553.

In the Questionnaire, Ms. Jones indicated that Mr. Stock can sit, stand and walk for less than one hour at a time. *AR* at 545. He can sit for a total of four hours in an eight-hour workday and stand and walk for an hour each. *AR* at 545. He can lift and carry up to 25 pounds occasionally, can occasionally use both hands for simple grasping repetitively and fine manipulation, but can use neither foot for pushing and pulling of leg controls. *AR* at 545-546. He can occasionally bend, squat, climb and reach, but can never crawl. *AR* at 546. Ms. Jones further indicated that Mr. Stock can never be around unprotected heights and shouldn't be around moving machinery. *AR* at 546. However, Mr. Stock would have no problems with exposure to marked changes in temperature and humidity, driving automotive equipment, or exposure to dust, fumes and gasses. *AR* at 546. In response to the form's request for the duration of the severity of Mr. Stock's symptoms, Ms. Jones notes that his problems started in 1988, got worse in "1994 with another MVA, 2013 hit with a rock each time pain has gotten worse." *AR* at 547. When asked how long she expected Mr. Stock's

conditions to be at this severity, Ms. Jones responded that "[t]his is a chronic pain condition that has not improved. Functional ability is decreased. He has received PT in the past, the sessions aggravated symptoms. He did not improve with PT." *AR* at 547. Finally, Ms. Jones referred the agency to her Quantified Functional Capacity Evaluation "for detailed functional ability." *AR* at 548.

In her Quantified Functional Capacity Evaluation, Ms. Jones measured "the functional status of Mr. Stock on Tuesday, April 12, 2016." *AR* at 550. Mr. Stock was able to stand for five minutes. *AR* at 550. He was able to sit for thirteen minutes. *AR* at 550. He was able to walk for 0.0 miles at 2 miles/hour. *AR* at 550. Mr. Stock has a maximum lifting capacity of 0.0 pounds from waist to shoulder and 0.0 pounds from shoulder to overhead. *AR* at 550. However, Ms. Jones then indicates that he has a maximum occasional lifting capacity of 25.0 pounds, which "places him into the medium category for lifting capacity[.]" *AR* at 550. Mr. Stock demonstrated a pushing and pulling capacity of 5.0 pounds, but was able to reach for objects in all directions with both arms. *AR* at 550-551. He could not balance, climb up and down one flight of stairs, crouch, stoop, kneel, or crawl. *AR* at 551. Given his abilities, Ms. Jones opined that in order for Mr. Stock "to successfully return to work in the medium strength category the following job factors restrictions must be met:"

> No standing for more than 5 minutes continuously.
> No sitting for more than 13 minutes continuously.
> No walking at all. The patient could not walk at the minimum required speed.
> No pushing more than 5 pounds.
> No pulling more than 5 pounds.
> No balancing activities.
> No climbing stairs.
> No crouching.
> No stooping.
> No Kneeling.
> No crawling.
> No pinching.

*AR* at 552. Finally, Ms. Jones made the following statements in the "Clinician Comments" section

of the form:

> He was in a MVA which has caused chronic pain. He has been unable to work since 2004 due to pain, discomfort and decrease in strength. Leaning over makes the pain worse. He is constantly in pain, even holding a piece of paper can be hard. He will drop paper to the floor frequently. After 2 minutes of standing he started to feel uncomfortable, would reach back for table for brief support. He becomes shaky after standing for 5 minutes. He has had frequent falls, legs have been giving out on him. Reaching overhead will aggravate neck pain. Starts to fidget about 10 minute mark of sustained sitting. He avoids stairs. He was unable to walk at 2 mph, 1 mph was starting to feel to fast for him and that he would fall down. He reports he even has a hard time walking around his house. At the end of pushing the cart he felt shaky, weak at the ankles. He has decreased endurance, decreased strength and poor balance. He had difficulty with most activities. Noticeable shortness of breath with pushing cart 10 feet. He would struggle completing a full day of work. He would need frequent rest breaks throughout each hour. He would also need the ability to change positions as needed. He is unable to tolerate one position for more than 10-15 minutes. Standing is limited to less then (sic) five minutes comfortably.

*AR* at 553.

Unfortunately for Mr. Stock, the ALJ afforded "little weight" to Ms. Jones' opinions,

thereby effectively rejecting them. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)

(equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v.

Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo* for this proposition); *Ringgold v.

Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (same). The same was the ALJ's prerogative, so

long as his reasoning is supported by the law and substantial evidence. In this case, the ALJ

reasoned:

> I afford little weight to the opinion of Ms. Jones, as her assessment is both internally inconsistent and does not comport with other evidence of record. The statements in the evaluation appear to rely heavily upon the Claimant's self-report rather than the Claimant's actual physical capabilities. Ms. Jones stated that the Claimant could lift and carry weight consistent with a medium exertion, however, she stated he could never walk, balance, stoop, kneel, crouch, or crawl. She further stated that the Claimant could only sit for thirteen minutes and walk for five minutes, which is not consistent with the Claimant's own testimony at the hearing. Finally, Ms.

Jones is a physical therapist, and therefore is not an acceptable medical source as defined by the Regulations.

*AR* at 25. Mr. Stock argues that these reasons are unsupported by law and substantial evidence, but the Court disagrees.

Medical evidence and opinions from "other sources," like physical therapists, are weighed using the factors stated in 20 C.F.R. § 416.927(c)(1) through (c)(6). *See* 20 C.F.R. § 416.927(f)(1). These factors include: (1) the examining relationship; (2) the treatment relationship; (3) supportability of the opinion; (4) consistency of the medical opinion with the record as a whole; (5) specialization; and, (6) any "other factors" "which tend to support or contradict the medical opinion." 20 C.F.R. § 416.927(c)(1)-(6); *see also Crowder v. Colvin*, 561 F. App'x 740, 744 (10th Cir. 2014). "[N]ot every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 416.927(f)(1); *see also* SSR 06-03p, 2006 WL 2329939 at *4. "The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2); SSR 06-03p, 2006 WL 2329939 at *6. Ultimately, "[i]n the case of a nonacceptable medical source like [Ms. Jones], the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (quoting *Keyes-Zachary*, 695 F.3d at 1164, in turn quoting SSR 06-03p, 2006 WL 2329939 at *6). With these standards in mind, the Court turns to the ALJ's reasons.

The ALJ's first reasons relate to the supportability of Ms. Jones' opinions and the consistency of her opinion with the record as a whole. *Compare AR* at 25 *with* 20 C.F.R. §§

416.927(c)(3), (c)(4). As such, the Court finds no legal error in their application. However, Mr. Stock argues that "[t]here is no inconsistency between being able to lift, based largely on upper extremity strength, and a very limited ability to stand or walk based on lumbar spine problems including degenerative disc disease and stenosis." [Doc. 20, p. 10]. Moreover, Mr. Stock argues that "[t]he ALJ does not cite to specific contradictory evidence." [*Id.*]. In other words, Ms. Stock argues these reasons are unsupported by substantial evidence.

There is some merit to Mr. Stock's latter argument. Generally, an ALJ should point to specific medical evidence which is inconsistent with a particular opinion; otherwise, the Court is left to guess which evidence the opinion is inconsistent with. *See Lewis v. Berryhill*, 680 F. App'x 646, 647 (10th Cir. 2017) (unpublished). Here, the ALJ could have been more explicit about what evidence he found to be inconsistent with Ms. Jones' opinion. However, the ALJ did not completely omit discussion of the evidence he believed belied Ms. Jones' position. Instead, prior to his discussion of the medical opinions in the file the ALJ discussed all of the evidence of record and, after making his weight assignments, the ALJ summarized the reasons for his RFC finding. *See AR* at 20-27. While the ALJ acknowledged that there is objective medical evidence of an underlying impairment in Mr. Stock's medical records, the evidence showed "4/5 motor strength of the lower extremities," normal ambulation, gait, and posture, and normal muscle tone. *See AR* at 27. The Court, therefore, finds that the ALJ's determination that Ms. Jones' opinion was inconsistent with the rest of the record to be supported by substantial evidence.

However, even if this reason is ignored, the remainder of the ALJ's reasons are supported by substantial evidence. Again, this standard is not a high one. "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). For example, the

Commissioner points out, and the Court agrees, that Ms. Jones' opinion that Mr. Stock can lift and carry 25 pounds occasionally and commensurate with "medium" work is inconsistent with her opinion that Mr. Stock can never walk. [*See* Doc. 25, p. 8]. Under the regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c). Light work, likewise,

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, ***a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.*** To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (emphasis added). Thus, if a claimant can perform medium or light work, they can also carry out sedentary work. "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a). In other words, all levels of work that Ms. Jones opined Mr. Stock would be limited to *require* some degree of walking and standing. However, Ms. Jones was of the opinion that Mr. Stock should never walk, yet that he could somehow carry 25 pounds commensurate with medium work. As the Commissioner argues, the Dictionary of Occupational Titles defines "carrying" as "[t]ransporting an object" and states that "[c]arrying most often is evaluated in terms of duration, weight carried, and ***distance*** carried." *Compare* [Doc. 25, p. 8] *with* Dictionary of Occupational Titles, APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702 (emphasis added). The fact that carrying is evaluated in terms of the

distance carried precludes Mr. Stock's argument that there is no inconsistency between Ms. Jones' opinion that he can occasionally carry 25 pounds but never walk.

There are also internal inconsistencies between Ms. Jones' Questionnaire and her Quantified Functional Capacity Evaluation. *Compare AR* at 544-547 *with AR* at 548-553. Most notably, Ms. Jones' Questionnaire responses indicate that Mr. Stock can walk and stand for a total of one hour in an eight-hour day whereas her Quantified Functional Capacity Evaluation indicates that walking is precluded. *See id.* Ms. Jones also indicated in her Questionnaire that Mr. Stock can occasionally bend, squat and climb, but then stated that he could not climb stairs, crouch or stoop in her Evaluation. *See id.* While these inconsistencies may not have been enough for the Court to discount Ms. Jones opinion were it reviewing the evidence *de novo*, that is not the Court's role. Rather, because there is more than a scintilla of evidence supporting the ALJ's reason, the Court must affirm.

Mr. Stock does not address the ALJ's other reasons for ascribing Ms. Jones' opinion little weight in his opening brief. [*See* Doc. 20, pp. 8-10]. While he does touch upon them in his Reply, the Court is not convinced that the ALJ erred. For example, Mr. Stock never addresses the ALJ's contention that Ms. Jones appeared to rely on his subjective complaints when filling out either her Questionnaire or Evaluation. However, this was an appropriate factor for the ALJ to consider, as it touches upon the supportability of Ms. Jones' opinion. *See* 20 C.F.R. § 416.927(c)(3). Likewise, the ALJ appropriately considered the fact that Ms. Jones' limitations were inconsistent with those to which Mr. Stock testified. *See* 20 C.F.R. § 416.927(c)(4). At the hearing before the ALJ, Mr. Stock explained that he can sit for about an hour, moving around, that he can stand for ten minutes and can walk for half a block. *AR* at 63. Again, the question is whether there is substantial evidence supporting the ALJ's reason. Regardless of whether the Court would reach a different result were

it reviewing this evidence *de novo*, it is simply not in a position to reweigh the evidence or substitute its judgment for the ALJ's.

Turning to the ALJ's final reason (that Ms. Jones is not an acceptable medical source under the regulations), Mr. Stock posits that under Social Security Ruling 06-3p, Ms. Jones' opinion warranted significant weight because it was consistent with other evidence in the record. [*See* Doc. 20, p. 9]. The Court rejects this argument, for two reasons. First, as discussed above, there is substantial evidence supporting the ALJ's determination that Ms. Jones' opinions were inconsistent with the evidence as a whole. Second, and more importantly, the ALJ's reliance on the fact that Ms. Jones is not an acceptable medical source was not misplaced. There is a distinction in the regulations between "acceptable" medical sources and those that are not. *See* SSR 06-03p, 2006 WL 2329939 at *2. "'Acceptable medical sources' include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Id.* Any other medical provider is referred to as an "other source." *Id.* The distinction is "necessary" because only "acceptable medical sources" can "establish the existence of a medically determinable impairment," give "medical opinions,"[3] and be considered "treating sources[4] . . . whose medical opinions may be entitled to controlling weight." *Id.* This is not to say that "other sources" are unimportant. To the contrary, as the Commissioner recognized when promulgating SSR 06-03p: "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously

---

[3] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

[4] "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.927(a)(2).

handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 232939 at *3. As such, while information from "other sources" "cannot establish the existence of a medically determinable impairment . . . information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at *2; *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) (explaining that while "other sources" cannot *diagnose* an impairment, their opinions are relevant to "the questions of *severity* and *functionality*") (citing *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007)); *See also Mounts v. Astrue*, 479 F. App'x 860, 865 (10th Cir. 2012) (Other source "evidence can be considered to show the severity of a claimant's impairment and how it affects her ability to work.").

To this end, Mr. Stock argues that "[g]iven the documentation of medical sources of the existence of medically determinable impairments, PT Jones was qualified to render an opinion regarding the severity of these impairments." [Doc. 20, p. 9]. The Court does not disagree with this statement in principle. However, it cannot agree that the ALJ was required to accept Ms. Jones' opinion where he found it to be based on Mr. Stock's subjective complaints, internally inconsistent, and inconsistent with other record evidence. Rather, because he found it to be unsupported, the ALJ acted within his discretion to discount Ms. Jones' opinions. *Compare* 20 C.F.R. § 416.927(f)(1) ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.").

### ii) *State Agency Medical Consultants - Physical*

As opposed to Ms. Jones, the ALJ gave "great weight" to the opinions of the State Agency medical consultants, who reviewed Mr. Stock's medical records and opined that he is capable of performing light work. *See AR* at 25. Mr. Stock argues that the ALJ's decision to do so was error, because the State Agency consultants' opinions predated Ms. Jones' findings. [*See* Doc. 20, p. 10]. Mr. Stock therefore argues that the opinions of the State Agency consultants were "outdated" and "certainly entitled to less weight than the opinions of Mr. Stock's treating sources." [Doc. 20, p. 11].

Mr. Stock's argument was rejected in *Tarpley v. Colvin*, 601 Fed. Appx. 641 (10th Cir. 2015) (unpublished). There, the Tenth Circuit held that an ALJ did not err in affording significant weight to the opinion of a non-treating agency physician, despite the fact that his opinion was postdated by two other opinions from treating sources, where nothing in the later medical records the claimant cited supported the disabling limitations two other doctors opined to or a material change in the claimant's condition that would render the state agency physician's opinion stale. *See generally, id.* at 644. The same is true here. In fact, Mr. Stock cites no evidence other than Ms. Jones' opinions that are inconsistent with the conclusions reached by the State Agency consultants. [*See* Doc. 20, pp. 10-11; Doc. 26, p. 4]. However, as discussed above, the ALJ gave good reasons for discounting Ms. Jones' opinions. Likewise, the Court finds that the ALJ gave good reasons for giving "great weight" to the State Agency consultants' opinions.

The ALJ stated that he gave "great weight" to the opinions of the State Agency consultants because:

> they are consistent with the evidence of record. Although these doctors did not have an opportunity to examine or treat the Claimant, their reports reflect a thorough review of the record. The DDS doctors are familiar with the SSA disability evaluation program, and evidence of record warrants that the undersigned give

great weight to their opinions, since these opinions are consistent with the longitudinal review of the evidence of record.

*AR* at 25. These reasons touch upon the consistency of the opinions with the record as a whole as well as their supportability. *See* 20 C.F.R. § 416.927(c)(3)-(4). Moreover, the ALJ's reasoning comports with 20 C.F.R. § 416.913a(b)(1), which states that such consultants' opinions must be considered in accordance with Section 416.927 of the regulations because "our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). More to the point, besides pointing to Ms. Jones' opinion, Mr. Stock does not challenge the ALJ's reasons for ascribing the consultants' opinions great weight, and the Court finds them to be supported by substantial evidence. *Compare AR* at 25 *with AR* at 137-143.

### iii)     Robert Thoma, Ph.D.

Mr. Stock next asserts that the ALJ improperly weighed the opinion of Dr. Thoma, a consultative psychological examiner who performed a neurophysiological evaluation of Mr. Stock on July 18, 2012 and August 29, 2012, and issued a report on Aust 29, 2012. [*See* Doc. 20, pp. 11-12]. As part of this evaluation, Dr. Thoma conducted:

- a Clinical Interview
- Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV)
- Repeatable Battery for the Assessment of Neuropsychological Status (RBANS)
- Trail Making Test, Parts A and B
- Grip Strength Test
- Finger Tapping Test
- Grooved Pegboard
- Beck Depression Inventory-Second Edition (BDI-II)
- Personality Assessment Inventory (PAI)

*AR* at 364. After summarizing the findings of these tests in his Report, Dr. Thoma issued the following "Summary/Impressions:"

> Full scale intellectual ability was in the borderline range (FSIQ = 73). An estimate of premorbid intellectual ability was in the average range, suggesting that a significant global decline in FSIQ has occurred at some point in the past. His performance on tests of attention, processing speed and working memory were all in the mildly to moderately impaired range. Mr. Stock's performance on memory tests was in the mildly impaired range overall, but performance on memory tests was susceptible to distraction and disorganization, to the extent that both learning and recall could become severely impaired at times. Consistent with this finding, Mr. Stock's scores on tests of executive functioning were within expectation except on tests of organization and planning, on which he evinced an impaired performance. Verbal reasoning and verbal fluency were moderately impaired. Visuospatial functions ranged from the average to low-average range.

*AR* at 368. Based on Mr. Stock's clinical history, his own behavioral observations, and Mr. Stock's neurocognitive test results, Dr. Thoma diagnosed Mr. Stock with Cognitive Disorder NOS, Post Traumatic Stress Disorder, Polysubstance Abuse and Dependence in full remission, Anxiety Disorder NOS, and rule out diagnosis of Bipolar I Disorder. *AR* at 369.

The ALJ gave "some weight" to Dr. Thoma's findings, neither rejecting them nor accepting them in full. *AR* at 24. The ALJ reasoned:

> The Claimant's attention span was noted to be in the mild to moderately impaired range, and his working memory was mildly impaired.… While the clinical findings of Dr. Thoma were generally consistent with the evidence, the evaluation itself is quite remote, and therefore, his assessment lacks significant probative value. Nonetheless, I find that Dr. Thoma's assessment is consistent with the ability of the Claimant to understand, remember, and carry out simple instructions.

*AR* at 24. Mr. Stock attacks this reasoning, arguing, first, that "there is nothing in the record to suggest that [his] IQ would improve," rendering the ALJ's reliance on the age of the opinion misplaced. [Doc. 20, p. 12]. Mr. Stock then argues that if the ALJ found this testing to be too remote, "he was obligated to order additional testing." [Doc. 20, p. 12]. Finally, Mr. Stock argues that "it is impossible to determined which portions of his opinion he accorded weight to, given the lack of significant mental limitations in his mental residual functional capacity assessment." [*Id.*]. The Court is not convinced.

17

First, the Court finds nothing improper in the ALJ's consideration of the age of Dr. Thoma's opinion. *See Maldonado v. Berryhill*, CIV 16-0392 KBM, 2017 WL 2491528, at \*5 (D.N.M. Apr. 26, 2017) ("[C]ommon sense dictates that an older opinion ought generally to give way to a more recent one[.]"). Here, the ALJ weighed Dr. Thoma's opinion after discussing all of the evidence, including Mr. Stock's more recent mental health treatment. *See AR* at 21-24. Mr. Stock does not, and cannot, point to medical records in his more recent past which substantiate greater restrictions that those Dr. Thoma opined to. [*See* Doc. 20, pp. 11-12; Doc. 26, pp. 4-5]. In fact, substantial evidence supports the notion that Mr. Stock's mental health improved over the course of his treatment with Epoch Behavioral Healthcare. *See, e.g., AR* at 494 (As of July 15, 2015, Mr. Stock was "Med compliant, no side effects. Patient is saying his moods are stable, no evidence of hypomania, depression or irritability. Sleeping well, and functioning at his best level. No major PTSD symptoms and nightmares have subsided. 'I worry, but it is not a big deal anymore, and my ritualistic activities are minimal, my only problem is my back pain, that is killing me.'"); *see generally AR* at 493-496. In other words, there is substantial evidence supporting the ALJ's reliance on the age of Dr. Thoma's opinion, and the opinion's age may permissibly be considered an "other factor[] … which tend[s] to support or contradict the medical opinion." 20 C.F.R. § 416.927(c)(6).

Turning to Mr. Stock's argument that the ALJ should have ordered additional testing if he found Dr. Thoma's opinion to be remote, the Court notes that it was within the ALJ's discretion whether to order a consultative examination. *See* 20 C.F.R. § 416.919a; *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) ("[T]he Secretary has broad latitude in ordering consultative examinations."). Under the regulations and case law,

> [a] consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or "additional tests are

> required to explain a diagnosis." .... But there is no need for a consultative examination when the ALJ has enough information to make a disability determination…. And if the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need "is clearly established in the record."

*Jazvin v. Colvin*, 659 Fed. Appx. 487, 489 (10th Cir. 2016) (citations omitted). Here, the ALJ ostensibly determined that he had enough information to make the disability determination. Moreover, Mr. Stock's attorney has never requested an additional consultative examination. In these circumstances, the Court finds no error in the ALJ's choice to issue a decision on the record before him.[5]

This leaves Mr. Stock's final argument, where he takes the position that the ALJ could not have given "some" weight to Dr. Thoma's opinion given the lack of mental restrictions in his RFC. [*See* Doc. 20, p. 12]. The Court is not convinced. Contrary to Mr. Stock's argument, the ALJ limited him to understanding, remembering and carrying out simple instructions. *AR* at 20. This was based on Dr. Thoma's finding that Mr. Stock's "attention span was noted to be in the mild to moderately impaired range and his working memory was mildly impaired." *AR* at 24. This limitation is not the same as no restriction, and it comported with the State Agency's findings at the initial and reconsideration level. *See AR* at 127-28, 144. In sum, the Court is not convinced that the ALJ erred in assigning only "some weight" to Dr. Thoma's opinions.

---

[5] In opposing this view, Mr. Stock relies on *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009), and *Cooksey v. Colvin*, 605 F. App'x 735 (10th Cir. 2015) (unpublished). [*See* Doc. 20, p. 12]. However, the Court finds that these cases actually support the ALJ's decision here. *See Wall*, 561 F.3d at 1063 (Noting that "an ALJ's duty to develop the record is not unqualified[,]" and ultimately concluding that the ALJ in that case did not err in further developing the record as to the claimant's mental impairment.); *Cooksey*, 605 F. App'x at 739 (concluding, based on *Wall* that the claimant had not shown sufficient evidence of a mental condition to require further development of the evidence.)

iv)    **Stephanie Ross, LISW**

Mr. Stock argues next that the ALJ should have given greater weight to the opinion of his

treating therapist, Stephanie Ross, LISW. [*See* Doc. 20, pp. 12-14]. The ALJ effectively rejected

Ms. Ross' opinions, rendered on September 26, 2014, by assigning them "little weight." *AR* at 24.

The ALJ did so for the following reasons:

> Stephanie Ross, a licensed social worker, completed a medical source questionnaire that stated that due to the Claimant's affective disorder and anxiety, the Claimant's symptoms resulted in a complete inability to function independently outside the home. The Claimant would also have marked limitations in performing daily activities, social functioning, maintaining concentration, persistence or pace, and experienced repeated episodes of decompensation. Ms. Ross also stated that the Claimant would have marked limitations in almost every area of understanding and memory, to include remembering work-like procedures, understanding and remembering detailed instructions, maintaining attention and concentration performing activities in a schedule, sustaining a normal routine without special supervision, and working in proximity or in coordination with others. The Claimant also had marked limitations in almost every aspect of social interaction to include interacting appropriately with the public, accepting instructions or criticism from supervisors, and getting along with coworkers, as well as maintaining socially appropriate behavior and basic standards of cleanliness. The Claimant also had marked limitation in the ability to respond to changes in the work setting or traveling in unfamiliar places or using public transportation. (Ex. Bl IF**). I give little weight to the opinion of Ms. Ross, as her statements in the medical source statement are inconsistent with her own evaluation dated June 20, 2014. (Ex. B2F).** In this evaluation, Ms. Ross noted that the Claimant was calm, friendly, and attentive. His affect was appropriate and his cognitive function was intact. The Claimant's short and long-term memory were intact, as evidenced by his ability to abstract and perform arithmetic calculations. His fund of knowledge and vocabulary were in the normal range. (Ex. B2F). **Ms. Ross did not provide any explanation for the discrepancies in her evaluation and her medical source opinion. In addition, I note that the clinical evaluation was performed for the purpose of the Claimant's entry into Drug Court, and not to evaluate the Claimant's disability claim. Finally, the medical source statement is also inconsistent with the Claimant's mental health treating notes from Epoch Behavioral Healthcare that state that the Claimant's mental health condition improved with medication and therapy, and that the Claimant's condition was stable. (Ex. B6F and BI0F). It is also noted that Ms. Ross is a licensed social worker, and therefore is not an acceptable medical source according to the Regulations. (20 CFR 404.1502, 404.1513, 416.902, and 416.913; HALLEX DI 22505.003). For the forgoing reasons, this opinion is afforded little weight.**

*AR* at 24-25.

Initially, the Court notes that the ALJ's reasons touch upon many of the regulatory factors, described above, that pertain to medical opinions. For example, by discussing the opinion's inconsistency with Ms. Ross' own intake notes, the ALJ touched upon the consistency of her opinion with the record as a whole. *See* 20 C.F.R. § 416.927(c)(4). Likewise, the ALJ appropriately considered how supported Ms. Ross' opinion was in light of her prior findings, and the discrepancies between the two. *See* 20 C.F.R. § 416.927(c)(3). Additionally, the fact that Ms. Ross performed her evaluation for Mr. Stock's entry into drug court, rather than for the purpose of his disability claim, is a permissible "other factor" the ALJ could consider. *See* 20 C.F.R. § 416.927(c)(6). Finally, as discussed above, it is permissible for an ALJ to consider a sources' lack of specialization when weighing her opinion. *See* 20 C.F.R. § 416.927(c)(5).

Mr. Stock disagrees, arguing that the fact that the evaluation was performed for drug court has "no bearing on the weight to be given to [Ms. Ross'] opinion." [Doc. 20, p. 13]. For the reasons stated above, the Court disagrees. However, even putting this reason aside, Mr. Stock has failed to challenge the bulk of the ALJ's rationale, which the Court finds to be supported by substantial evidence. For example, Mr. Stock cannot argue that Ms. Ross' initial assessment is inconsistent with her mental health questionnaire. *Compare AR* at 372-373 *with* 511-518. Nor has Mr. Stock shown that the ALJ's finding that his mental health condition improved with medication and therapy was unsupported by substantial evidence. *See generally AR* at 413-422, 489-510. Finally, while the Court agrees in principle that the ALJ should not have rejected Ms. Ross' opinions on the ground that she is not an acceptable medical source, [*see* Doc. 20, p. 14], the Court finds no reversible error where, as here, the ALJ's reasoning is otherwise supported by substantial evidence.

Mr. Stock's final challenge to the ALJ's weighing of the medical opinions in the record attacks the ALJ's decision to give "great weight" to the opinions of the State Agency psychological consultants. [*See* Doc. 20, pp. 14-15]. These consultants reviewed Mr. Stock's claim at the initial and reconsideration stages, concluding that he "retains the capacity to understand, remember, and carry out simple instructions; attend /concentrate for extended periods with usual breaks; interact appropriately with others in the workplace; exercise reasonable judgment with work-related tasks; and complete a routine workday under normal supervision." *AR* at 128 (January 14, 2015 initial denial), 144 (June 30, 2015 denial on reconsideration). The ALJ gave these consultants' opinions "great weight" because they were "consistent with the evidence of record" and "reflect a thorough review of the record." *AR* at 25. He further reasoned that the consultants were "familiar with the SSA disability evaluation program[.]" *AR* at 25.

Mr. Stock's attack on this reasoning does not specifically address the ALJ's findings that the consultants' opinions reflected a thorough review of the record or that they were familiar with the disability evaluation standards. [*See* Doc. 20, pp. 14-15; *see generally* Doc. 26]. Instead, he posits that the consultants' opinions were stale, because they did not consider Ms. Ross' Questionnaire which opines that his symptoms result in marked impairments and meet the listings. [Doc. 20, pp. 14-15]. However, Ms. Ross' September 26, 2014 Questionnaire predated the consultants' conclusions at both the initial and reconsideration levels, which issued in 2015. *AR* at 128, 144. As such, it is not apparent to the Court that these consultants made their determinations without reviewing the Ms. Ross' records and Questionnaire. For example, at the initial level the consultant relied on Ms. Ross' initial evaluation of Mr. Stock and noted that the records had been received on December 30, 2014. In other words, Mr. Stock's argument that these consultants'

opinions should be disregarded because they did not consider Ms. Ross' opinions amounts to speculation.

**B) The ALJ's findings at Step Three are supported by substantial evidence.**

Mr. Stock next argues that "[t]he ALJ committed reversible error in failing to find that the claimant's psychiatric impairments meet and/or equal the criteria of the mental Listings of Impairments under § 12.02 – *Organic Mental Disorders*, § 12.04 – *Affective Disorders*, § 12.06 – *Anxiety Related Disorders*, and § 12.08 – *Personality Disorders*." [Doc. 20, p. 16]. In support, Mr. Stock posits that "[t]he ALJ's findings under the "B" criteria of the Listings (Tr. 19) were without basis and reflect an inappropriate superimposition of his own findings over those of Mr. Stock's treating therapist [(Ms. Ross)]." [*Id.* (citation omitted)]. In her Response, the Commissioner points out that the ALJ discounted Ms. Ross' opinions, including her findings that Mr. Stock meets the requirements of the Listings; thus, he was not required to accept them. [Doc. 25, p. 15]. The Court finds that the Commissioner has the more persuasive argument.

"At step three, the [ALJ determines] ... whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Lax*, 489 F.3d at 1085 (internal citations, quotation marks, and brackets omitted). In order to meet any of the Listings he complains about, Mr. Stock had to satisfy the Paragraph B criteria. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. "Paragraph B requires that a medically documented condition specified in Paragraph A results 'in at least two of the following: 1. marked restriction of activities of daily living; or 2. marked difficulties in maintaining social functioning; or 3. marked difficulties in maintaining concentration, persistence,

or pace; or 4. repeated episodes of decompensation, each of extended duration.'" *Davison v. Colvin*, 596 F. App'x 675, 677 (10th Cir. 2014) (unpublished).

In this case, the ALJ determined that Mr. Stock's mental impairments do not cause at least two "marked" limitations in the above categories, meaning the Paragraph B criteria were not satisfied, and Mr. Stock's conditions do not meet the Listings. *AR* at 20. The ALJ made this determination based on Mr. Stock's Function Report. *Compare AR* at 20 *with AR* at 287-294. As noted, Mr. Stock does not take issue with these findings, other than to argue that Ms. Ross' opinions should have resulted in the ALJ finding that he met the Listings. The Court is not persuaded.

First, Mr. Stock has cited nothing to indicate that the ALJ erred in relying on his function report when deciding whether he met a listing. *See, e.g.*, *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015) (unpublished); 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("We will consider all relevant evidence about your mental disorder and your daily functioning that we receive from you and from people who know you."). More importantly, Mr. Stock has not articulated how the ALJ erred in effectively rejecting Ms. Ross' opinions that he met the Listings at issue. In the absence of Ms. Ross' opinion, Mr. Stock has failed to adduce sufficient medical evidence showing that he meets a listing. *See Gallegos v. Colvin*, 646 F. App'x 613, 617 (10th Cir. 2016) (unpublished); *see also Perez-Leeds v. Colvin*, 596 Fed. Appx. 714, 717 (10th Cir. 2014) (unpublished) ("Significantly, Ms. Perez–Leeds does not cite to any evidence related to her social functioning that the ALJ failed to discuss and that would demonstrate she has a marked limitation in this functional area."). For these reasons, Mr. Stock has failed to meet his burden to show that the ALJ's findings at Step Three were unsupported by substantial evidence.

**C) The ALJ's RFC finding was supported by substantial evidence and the Court finds no error in his Step Five findings.**

Mr. Stock next asserts that the ALJ failed to include "multiple documented impairments" in his RFC, resulting in an unsupported finding at Step Five. [*See* Doc. 20, pp. 18-22]. To the contrary, argues the Commissioner, the ALJ included all of Mr. Stock's supported limitations. [*See* Doc. 25, p. 16]. Thus, the Commissioner argues that Mr. Stock's argument amounts to rehashing his disagreements with the weight given by the ALJ to the various medical opinions in the record – specifically, Ms. Jones' and Ms. Ross.' [*See id.* at pp. 15-16]. The Court agrees with the Commissioner. Mr. Stock's argument is premised upon the findings by Ms. Jones and Ms. Ross, both which were effectively rejected by the ALJ in this case, and upon Dr. Thoma's report, which the ALJ only gave "some" weight to. [*See* Doc. 20, pp. 18-22]. Mr. Stock offers no new reasons why the ALJ erred in weighing these opinions, and the Court has already discussed why the ALJ's analysis was supported by the applicable legal standards and substantial evidence. The Court cannot and will not reweigh the evidence. As such, the ALJ was not required to include additional limitations in his RFC assessment, or in his hypothetical question to the vocational expert. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

**D) Mr. Stock has cited nothing that indicates he cannot perform the jobs identified by the ALJ.**

Finally, based on a hyper-technical reading of the Dictionary of Occupational Titles, Mr. Stock argues that his IQ scores "would restrict an individual to jobs with a GED Reasoning level of '1'[.]" [Doc. 20, pp. 22-23]. Thus, he argues, he cannot perform two of the three jobs identified

by the vocational expert. [*Id.*]. Additionally, he argues that his IQ scores limit him to the lowest General Learning and Verbal aptitudes required for jobs in the Dictionary, all of which are exceeded by the jobs identified. [*Id.*]. As the Commissioner points out, Mr. Stock cites no legal or evidentiary support for his assertion that his IQ scores limit him so. [*See* Doc. 25, p. 17].

The Court finds no error. As the Tenth Circuit has pointed out, "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development." *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished). Here, even assuming that the ALJ erred in including office helper and cafeteria attendant jobs in due to their slightly higher GED levels, *see* DOT 239.567-010, 1991 WL 672232; DOT 311.677-010, 1991 WL 672694, he also identified a third job – bakery worker – which comports with Mr. Stock's limitations and which exists in significant numbers in the national economy. *See* DOT 524.687-022, 1991 WL 674401; *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Moreover, as noted, Mr. Stock has cited no authority or medical evidence indicating that his IQ scores limit his learning aptitudes to the lowest possible level, as he argues.

## V) CONCLUSION

A claimant in a social security appeal faces an uphill climb. The Court is not permitted to reweigh the evidence if an administrative finding is supported by substantial evidence, which is more than a scintilla and less than a preponderance. Here, Mr. Stock has failed to meet his burden to show that the ALJ's weighing of the medical opinions in the record was unsupported by substantial evidence. As such, the Court has little choice but to affirm the ALJ's subsequent findings, which are based primarily on the weight he assigned to these opinions.

Wherefore, IT IS THEREFORE ORDERED that Samuel Stock, Jr.'s Motion to Reverse and Remand [Doc. 19] is **DENIED** and the decision of the Acting Commissioner is **AFFIRMED**.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent